# 14-1759-cv

## United States Court of Appeals

### *for the*

## Second Circuit

JANE ROE, individually and on the behalf of all others similarly situated,
JANE DOE, individually and on the behalf of all others similarly situated,

*Plaintiffs-Appellants,*

– v. –

EMPIRE BLUE CROSS BLUE SHIELD, ST. JOSEPH'S MEDICAL CENTER,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLANTS

NEWMAN FERRARA LLP
*Attorneys for Plaintiffs-Appellants*
1250 Broadway, 27th Floor
New York, New York 10001
(212) 619-5400

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................iii

I. JURISDICTIONAL STATEMENT ........................................................1

II. ISSUES PRESENTED FOR REVIEW ..................................................2

III. SUMMARY OF THE ARGUMENT ....................................................3

IV. STATEMENT OF RELEVANT FACTS...............................................6

V. STATEMENT OF THE CASE..............................................................8

VI. STANDARD OF REVIEW..................................................................9

VII. ARGUMENT ...................................................................................10

    A.    The District Court Failed to Independently Assess Appellants'
        Breach of Fiduciary Duty Claims Under ERISA....................................10

        1. ERISA Plan Fiduciaries May Be Held Liable For Their
           Failure to Act in Best Interest of Plan Participants...........................11

        2. The District Court Failed to Apply The Proper Standard.................12

        3. Appellants Properly Pleaded Their Breach Of Fiduciary
           Duty Claims.....................................................................................13

    B.    Altering The Plan For The Sole Purpose Of Denying Coverage
        To Same-Sex Spouses of Plan Participants Violates ERISA §
        510 ....................................................................................................18

        1. The District Court Erred by Too Narrowly Applying ERISA
           § 510...............................................................................................18

2. Appellants' Suggested Interpretation of § 510 Promotes ERISA's Uniform Civil Enforcement Scheme ..................................21

C. The District Court Should Have Considered Appellants' Motion For a Preliminary Injunction Since Appellants are Likely to Succeed on the Merits of Their Claims ...................................................24

VIII. CONCLUSION...................................................................................25

CERTIFICATE OF COMPLIANCE..........................................................26

# TABLE OF AUTHORITIES

CASES                                                                    PAGE NO.

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004)............................................................21, 23

*Agway, Inc. Emps. 401(k) Thrift Inv. Plan v. Magnuson*,
    No. 5:03-CV-1060 (HGM/DEP), 2006 WL 2934391
        (N.D.N.Y. Oct. 12, 2006).....................................................17

*Amaker v. N.Y. State Dep't of Corr. Servs.*,
    435 Fed. Appx. 52 (2d Cir. 2011)...................................................9

*Bassett v. Snyder*,
    951 F. Supp. 2d 939 (E.D. Mich. 2013).......................................25

*Bond v. Trustees of STA-ILA Pension Fund*,
    902 F. Supp. 650, 655 (D. Md. 1995).........................................22

*Cement and Concrete Workers Dist. Council Pension Fund v.*
    *Ulico Cas. Co.*,
    387 F. Supp. 2d 175 (E.D.N.Y. 2005)....................................12, 13

*Central States, Se. & Sw. Areas Pension Fund v. Central Transport, Inc.*,
    472 U.S. 559 (1985)............................................................11, 17

*Chambers v. Time Warner Inc.*,
    282 F.3d 147 (2d Cir. 2002) ..........................................................9

*Croskey v. Ford Motor Co.-UAW*,
    No. 01 CIV. 1094(MBM), 2002 WL 974827 (S.D.N.Y. May 6, 2002)........13

*De Sylva v. Ballentine*,
    351 U.S. 570 (1956)....................................................................22

*Dister v. Continental Grp., Inc.*,
    859 F.2d 1108 (2d Cir. 1988) ................................................18, 19

*Donovan v. Bierwirth*,
    680 F.2d 263 (2d Cir. 1982) ................................................11, 12

*Grabois v. Jones*,
 No. 94 CIV.2070(TPG), 1998 WL 158756 (S.D.N.Y. Apr. 3, 1998)...........13

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*,
 No. 83 CIV. 5401 (DC), 1997 WL 278116 (S.D.N.Y. May 23, 1997).........17

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
 No. 02–CV–8853, 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005)..................11

*In re Morgan Stanley ERISA Litig.*,
 696 F. Supp. 2d 345 (S.D.N.Y. 2009) ...........................................................11

*In re Pfizer Inc. ERISA Litig.*,
 No. 04 Civ. 10071(LTS)(JFE), 2009 WL 749545
 (S.D.N.Y. Mar. 20, 2009) .......................................................................11

*In re SLM Corp. ERISA Litig.*,
 No. 08 Civ. 4334(WHP), 2010 WL 3910566 (S.D.N.Y. Sep. 24, 2010) .....17

*Mattei v. Mattei*,
 126 F.3d 794 (6th Cir. 1997) ........................................................................19

*McDonnell Douglas Corp. v. Green*,
 411 U.S. 792 (1973)...............................................................................18, 19

*McGann v. H & H Music Co.*,
 946 F.2d 401 (5th Cir. 1991) .......................................................................20

*Metropolitan Life Ins. Co. v. Massachusetts*,
 471 U.S. 724 (1985)......................................................................................13

*PaineWebber Inc. v. Bybyk*,
 81 F.3d 1193 (2d Cir. 1996) ...........................................................................9

*Pamlab, L.L.C. v. Macoven Pharms., L.L.C.*,
 No. 11 Civ. 9022 TPG JCF, 2012 WL 2540234
 (S.D.N.Y. June 29, 2012) .......................................................................24

*Pender v. Bank of America Corp.*,
    756 F. Supp. 2d 694 (W.D.N.C. 2010) ......................................................... 17

*Reckitt Benckiser Inc. v. Motomco Ltd.*,
    760 F. Supp. 2d 446 (S.D.N.Y. 2011) ......................................................... 24

*Rodriguez ex rel. Rodriguez v. DeBuono*,
    175 F.3d 227 (2d Cir. 1999) ......................................................... 24

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*,
    748 F.2d 774 (2d Cir. 1984) ......................................................... 9

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ......................................................... 24

*Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*,
    7 F.3d 1091 (2d Cir. 1993) ......................................................... 9

*State Street Bank and Trust Co. v. Salovaara*,
    326 F.3d 130 (2d Cir. 2003) ......................................................... 11

*Straus v. Prudential Emp. Sav. Plan*,
    253 F. Supp. 2d 438 (E.D.N.Y. 2003) ......................................................... 19, 20

*Sweet v. Sheahan*,
    235 F.3d 80 (2d Cir. 2000) ......................................................... 9

*Tirone v. N.Y. Stock Exch., Inc.*,
    No. 05 Civ. 8703(WHP), 2006 WL 2773862, 40 Employee Benefits
        Cas. 1375 (S.D.N.Y. Sept. 28, 2006) ......................................................... 19

*United States v. Windsor*,
    133 S. Ct. 2675 (2013) ......................................................... *passim*

<u>STATUTES</u>

28 U.S.C. §1291 (2006) .......................................................................1

28 U.S.C. § 1331 (2006) ......................................................................1

ERISA § 3(7), 29 U.S.C. § 1102(7) (1974) ........................................3

ERISA, § 404, 29 U.S.C. § 1104 (2006) ...................................*passim*

ERISA, § 409, 29 U.S.C. §1109 (2008) ....................................*passim*

ERISA § 502(e)(1), 29 U.S.C. § 1132 (e)(1) (2009) ............................1

ERISA § 510, 29 U.S.C. § 1140 (2006) .....................................*passim*

N.Y. DOM. REL. LAW § 10-a(l) (2011)...............................................6, 14

<u>RULES</u>

Fed. R. Civ. P. 12(b)(6)......................................................................1, 9

<u>ADMINISTRATIVE GUIDANCE</u>

I.R.S. Notice 2014-19 (Apr. 21, 2014) ...............................................16

I.R.S. Rev. Rul. 2013-17 (Aug. 29, 2013) .....................................15, 23

D.O.L. Tech. Rel. No. 2013-04 (Sept. 18, 2013).................................15

## I.   <u>JURISDICTIONAL STATEMENT</u>

The district court had jurisdiction over the underlying action pursuant to 28 U.S.C. § 1331 and the Employee Retirement Income Security Act of 1974 ("ERISA") § 502(e)(1), 29 U.S.C. § 1132 (e)(1). This Court has appellate jurisdiction over the underlying action pursuant to 28 U.S.C. §1291 because this appeal is taken from the final judgment entered on May 2, 2014, of the United States District Court for the Southern District of New York, dismissing Appellants' complaint pursuant to Fed. R. Civ. P. 12(b)(6) and determining that Appellants' cross-motion for a preliminary injunction was moot, terminating the action. Appellants timely filed a notice of appeal on May 22, 2014.

## II.    <u>ISSUES PRESENTED FOR REVIEW</u>

1. Whether the district court erred in failing to properly analyze Appellants' ERISA §§ 404, 29 U.S.C. § 1104, 409, 29 U.S.C. §1109 claim, arising from Appellees' exclusion of Appellants, as legally-married, same-sex spouses, from access to benefits under the Direct POS Plan for St. Joseph's Medical Center (the "Plan"), which are otherwise made available to spouses of other Plan participants.

2. Whether the district court erred in holding that Appellees did not violate ERISA § 510, 29 U.S.C. § 1140 by purposefully altering the Plan to exclude same-sex spouses of participants from coverage while continuing to provide coverage to other spouses.

3. Whether the district court erred in holding that Appellants' motion for a preliminary injunction was moot.

4. Whether the district court erred by dismissing the Appellants' complaint with prejudice.

### III. <u>SUMMARY OF THE ARGUMENT</u>

Appellants Jane Roe ("Roe") and Jane Doe ("Doe") (collectively "Appellants") respectfully submit this brief in support of their appeal of the Opinion and Order issued on May 1, 2014 by District Court Judge Nelson S. Roman of the United States District Court for the Southern District of New York (the "Order") granting Defendant-Appellees Empire Blue Cross Blue Shield ("BCBS") and St. Joseph's Medical Center ("St. Joseph's") (collectively the "Appellees")'s motion to dismiss for failure to state a claim and determining the Appellants' cross-motion for a preliminary injunction was moot, terminating the action. (JA 22-37, Order).[1]

Appellants are legally-married, same-sex spouses in the state of New York. (JA 15, ¶ 18). Appellant Roe was and is an employee of St. Vincent's Westchester, a division of St. Joseph's, a resident of Westchester County, New York, and a "participant" in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1102(7). (JA 15, ¶ 18). Appellant Doe was and is the legal spouse of Appellant Roe and a resident of Westchester County, New York, and is a proper "beneficiary" of the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1102(7).

---

[1] References to the Joint Appendix are cited herein as "JA __." References to paragraph numbers in the Amended Complaint (as part of the Joint Appendix) are cited as "JA __, ¶__."

3

This action arises from St. Joseph's and BCBS's discriminatory and unlawful denial of Appellants' access to health care benefits under the Direct POS Plan for St. Joseph's Medical Center (the "Plan").  While the Plan is open to employees and their spouses as beneficiaries, such benefits are denied to same-sex spouses through a Plan provision inserted after New York legalized same-sex marriage.  (JA 15, ¶ 22-23, 25).  Both the enforcement of this discriminatory Plan provision and its creation give rise to the claims in this action.

First, Appellants allege that it is a breach of fiduciary duty to act in a purely self-interested manner by enforcing a discriminatory and unlawful Plan provision that denies spousal health care benefits for a subset of Plan participants; namely, those in legally-recognized, same-sex marriages.  As recognized by the Supreme Court in *United States v. Windsor*, 133 S. Ct. 2675, 2681 (2013), such an exercise undermines "New York's . . .  proper exercise of its sovereign authority."  ERISA commands that plan fiduciaries act with an "eye-single" to the interests of the plan participants and beneficiaries and, thus, enforcing a Plan provision that flouts New York law and discriminatorily denies benefits to a subset of lawfully-married participants while providing those same benefits to others constitutes a breach of fiduciary duty under ERISA §§ 404, 409.

Separately, Appellees breached ERISA § 510 by altering the Plan to avoid covering spouses of participants in legal same-sex marriages.  ERISA § 510

provides, in pertinent part, that "[i]t shall be unlawful for any person to . . . discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]"  29 U.S.C. § 1140 (2006).  Absent St. Joseph's intentional manipulation of the Plan to exclude Appellants and other legally-married, same-sex couples from spousal benefits, Appellants would be entitled to benefits under the Plan.  Therefore, the act of changing the Plan for no rational purpose other than to deny benefits to a protected group of individuals, amounts to a discriminatory act which interferes with Appellants' attainment of benefits, in violation of ERISA § 510.

The district court erred in two material respects when analyzing Appellants' ERISA claims.  First, it failed to properly analyze Appellants' §§ 404, 409 breach of fiduciary claims as separate and distinct from their § 510 claim.  To wit, the district court concluded erroneously that Appellants' failure to make out a § 510 claim foreclosed a finding of breach of fiduciary duty.  However, because Appellants' breach of fiduciary duty claims are in no way contingent on the success of their § 510 claim, this holding was in error.  Appellants are thus entitled to have their breach of fiduciary duty claims considered.

Second, the district court too narrowly interpreted § 510 in finding that the absence of an adverse employment action taken against Appellant Roe,

5

individually (*i.e.*, termination), was dispositive.  This conclusion was in error for two reasons: (a) construed broadly, as it should be, § 510 covers instances of Plan amendments designed to discriminate against certain plan participants and beneficiaries (here, same-sex spouses); and (b) the district court failed to recognize that adverse employment action can result from relegating certain employees to second-class status and is not limited to the termination of a single individual.

For these reasons, the district court's dismissal should be reversed and Appellants' request for a preliminary injunction should be considered.

## IV.  **STATEMENT OF RELEVANT FACTS**

Appellant Roe has been an employee of St. Joseph's from September 2007 to present, and a participant in the Plan on all pertinent dates.  (JA 15, ¶ 18).  The Plan is administrated by BCBS and sponsored by St. Joseph's.  (JA 15, ¶ 19).

On or about October 15, 2011, following the passage of N.Y. DOM. REL. LAW § 10-a(l) (2011), otherwise known as the Marriage Equality Act, which legalized same-sex marriages in New York and mandated full legitimacy be accorded to all same-sex marriages with respect to all applicable laws, Appellant Roe married her partner, Appellant Doe.  (JA 15, ¶ 20).  Upon information and belief, the Plan was amended at or about the time of New York's passage of the

6

Marriage Equality Act, explicitly to exclude same-sex spouses from enrolling as beneficiaries under the spousal beneficiary coverage of the Plan.[2]

On or about December 16, 2011, during the open period of Plan enrollment, Appellant Roe made a request to St. Joseph's that her spouse be added as a dependent to her medical benefits coverage so that she could receive the benefits that are provided by the Plan, as such benefits are regularly provided to spouses under the Plan. (JA 15, ¶ 21). On or about December 22, 2011, Appellant Roe was notified verbally by Carmela Pisanello of St. Joseph's Human Resources that her spouse would be denied coverage because the Plan expressly excluded "same-sex" couples as eligible dependents of the Plan's participants. Appellant Roe requested that the denial be put in writing and, on or about February 8, 2012, she received a letter from Ms. Pisanello confirming the denial of coverage. (JA 15-16, ¶ 22).

In accordance with the grievance procedures set forth in the Plan, on April 12, 2012, Appellant Roe sent "Level I" grievance letters to both BCBS and St.

---

[2]  Although the Complaint does not allege expressly that St. Joseph's changed the Plan upon the enactment of the Marriage Equality Act, Appellants did argue this fact in the district court and, in any event, there would have been no reason for St. Joseph's to change the Plan language were it not in direct response to New York legalizing and/or recognizing same-sex marriage and the risk that it may be required to provide benefits for same-sex spouses of Plan participants. Further, even assuming the amendment pre-dated the change in the law, the continued enforcement after the Marriage Equality Act would itself give rise to the claims asserted. As the Complaint was dismissed with prejudice, however, Appellants were not afforded an opportunity to plead this with more specificity.

Joseph's complaining about the denial of coverage and requesting that the determination be reversed.  Despite the Plan requirement that BCBS respond within fifteen (15) calendar days, Appellants received no response to their Level I grievance.  (JA 16, ¶ 23).  Again, in accordance with the same grievance procedures, on May 23, 2012, Appellant Roe sent a "Level 2" grievance letter to both BCBS and St. Joseph's complaining once more about the denial of coverage and requesting reconsideration.  (JA 16, ¶ 24).  On or about May 29, 2012, BCBS responded to the Level 2 grievance letter in writing, informing Appellant Roe that the denial of coverage would not be reversed because "under [the Plan], same sex spouse and domestic partner is an EXCLUSION under the benefit."  (JA 16, ¶ 25).

## V.    <u>STATEMENT OF THE CASE</u>

Appellants filed their original Complaint on June 19, 2012.  On September 30, 2013, Appellees served their motions to dismiss.  On October 30, 2013, Appellants lodged their opposition and cross motion for preliminary injunction. Appellees filed their respective replies and oppositions to the Appellants' cross motion on December 24, 2013. Appellants served their reply papers in further support of their cross-motion on January 24, 2014.  All submissions were bundled for e-filing purposes on January 24, 2014.

On May 1, 2014, the district court entered an order granting Appellees' motions to dismiss with prejudice and found Appellants' motion for preliminary

injunction moot.  Judgment was entered on that order on May 2, 2014.  On May 22, 2014, Appellants filed a timely notice of appeal pertaining to the district court's order and judgment.

## VI.    STANDARD OF REVIEW

The standard of review of the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) is plenary.   A district court's ruling dismissing a complaint pursuant to Rule 12(b)(6) is reviewed "*de novo.*"  *Amaker v. N.Y. State Dep't of Corr. Servs.*, 435 Fed. Appx. 52, 54 (2d Cir. 2011) (*quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993) (*de novo* review requires a court to "employ[] the same tests as those applied at the district court.").

"When an appeal comes before this Court on a motion to dismiss**,** we accept as true the factual allegations of the complaint."  *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1197 (2d Cir. 1996).  In reviewing such a motion, "we must read the complaint liberally, drawing all inferences in favor of the pleader."  *Id.*  As this Court has instructed, "we will reverse a district court's dismissal of the complaint 'unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief.'"  *Id.* (*quoting Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)); *see also Sweet v. Sheahan*,

235 F.3d 80, 83 (2d Cir. 2000) (dismissal of complaint is "inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief.").

## VII. <u>ARGUMENT</u>

### A.    The District Court Failed to Independently Assess Appellants' Breach of Fiduciary Duty Claims Under ERISA

The district court conflated Appellants' two independent statutory causes of action brought under ERISA.    Whereas ERISA §§ 404, 409 afford plan participants protection by ensuring that plan fiduciaries act in the best interest of participants, the departure from which is an actionable breach, ERISA § 510 liability arises when there is unlawful interference with the attainment of benefits. Appellants pleaded both causes of action separately and independently.

Despite the autonomy of these claims and their elements, the district court improperly hinged the sufficiency of Appellants' breach of fiduciary duty claim on the success of their § 510 claim.    In its Opinion and Order, the district court "determined that the Plan does not violate section 510 of ERISA . . . therefore, carrying out the terms of the Plan cannot be a violation of fiduciary duties." (JA 37, Order at 16).    However, a breach of the duty to act in the best interest of plan participants is actionable under ERISA §§ 404 and 409, notwithstanding whether such conduct independently violates another ERISA provision.    As such,

Appellants' breach of fiduciary duty claim should be subject to independent consideration. The district court's failure to do so was in error.

**1.    ERISA Plan Fiduciaries May Be Held Liable For Their Failure to Act in Best Interest of Plan Participants**

Plainly, a breach of fiduciary duty under ERISA §§ 404, 409 does not require a fiduciary's violation of a separate provision of ERISA. *See In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 353 (S.D.N.Y. 2009). A well pleaded breach of fiduciary duty claim "must allege 1) that defendant was a fiduciary who, 2) was acting within his capacity as a fiduciary, and 3) breached his fiduciary duty." *Id.*; *see also In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02–CV–8853, 2005 WL 563166, at *3 (S.D.N.Y. Mar. 10, 2005). Such a breach arises from the affirmative obligation that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) (2008). ERISA thus creates a "statutory duty of loyalty" which requires "that a fiduciary act . . . with an 'eye single to the interests of the participants and beneficiaries.' " *In re Pfizer Inc. Erisa Litig.*, No. 04 Civ. 10071(LTS)(JFE), 2009 WL 749545, at *12 (S.D.N.Y. Mar. 20, 2009) (*quoting State Street Bank and Trust Co. v. Salovaara*, 326 F.3d 130, 136 (2d Cir. 2003) (*quoting Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982))). Ultimately, acting "in the interest of the participants" includes assuring the equitable character of ERISA plans. *Central States, Se. & Sw. Areas Pension Fund*

11

*v. Central Transport, Inc.*, 472 U.S. 559, 570-71 (1985) (*internal citations omitted*) (the Supreme Court identified a trustee's responsibility to "assur[e] the equitable character" of the plans as a congressional policy of ERISA). Thus, an independent claim for breach of fiduciary duty does not rely on any additional violation of ERISA, but constitutes a violation of ERISA, in and of itself.

## 2.    The District Court Failed to Apply The Proper Standard

Appellants pleaded their breach of fiduciary duty cause of action consistent with well established and controlling precedent. By failing to place the interests of Plan participants above their own, St. Joseph's and BCBS breached their fiduciary duty to such participants, including Appellants. *See Donovan*, 680 F.2d at 271 (Appellees failed to meet their obligation "to avoid placing themselves in a position where their acts as officers or directors of the corporation will prevent their functioning with the complete loyalty to [plan] participants."). Simply, the court did not apply this standard to the facts.

The district court's fleeting rejection of Appellants' claim failed to consider the well established elements for a breach of fiduciary duty. Instead, the district court relied inversely (and incorrectly) on dicta from an Eastern District opinion for the premise that a fiduciary's administration of a Plan which violates ERISA does not necessarily create a breach of fiduciary duties. (JA 36-37, Order at 15-16, citing *Cement and Concrete Workers Dist. Council Pension Fund v. Ulico Cas.*

*Co.*, 387 F. Supp. 2d 175, 184-85 (E.D.N.Y. 2005)).  From this, the court reached the erroneous conclusion that because "the Plan does not violate ERISA" under § 510, no fiduciary duty was breached.  (JA 37, Order at 16).  However, this holding does not logically flow from the *Ulico* opinion, which in fact distinguished between other violations of ERISA and a breach of fiduciary duty, as independent claims.  *See id*. at 179.  Had the district court in fact followed the guidance of *Ulico*, it would have analyzed Appellants' claims independently, as alleged, rather than contingently.  The district court's failure to do so constitutes reversible error.

### 3. Appellants Properly Pleaded Their Breach Of Fiduciary Duty Claims

Had the district court properly, and independently, analyzed Appellants' breach of fiduciary claim, it would have determined that a claim was sufficiently pleaded; *i.e.,* that Appellees' had breached their obligations in violation of ERISA by enforcing a discriminatory and unlawful plan provision that treated legally-married same-sex spouses differently than opposite-sex spouses.  Ironically, the district court acknowledged that "[i]ssues about marriage and divorce, which may arise under ERISA, are governed by state law and are not subject to the ERISA preemption clause."  (JA 26, Order at 5 (*quoting Grabois v. Jones*, No. 94 CIV.2070(TPG), 1998 WL 158756, at *4 (S.D.N.Y. Apr. 3, 1998))); *see also Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 740 (1985); *Croskey v. Ford Motor Company-UAW,* No. 01 CIV. 1094(MBM), 2002 WL 974827, at *4

13

(S.D.N.Y. May 6, 2002). Yet, despite the district court's recognition that ERISA is guided by state law in defining what a "marriage" is, it failed to apply that principle in the context of Appellants' allegations.

To be clear, Appellees' breach was not its failure to provide spousal benefits generally (which they are permitted to do); rather, it was Appellees putting their own interests ahead of the interests of Plan participants by depriving certain plan participants recognition of their marriages pursuant to New York law. *See* N.Y. DOM. REL. LAW § 10-a(l) (2011) ("No government treatment or legal status, effect, right, benefit, privilege, protection or responsibility relating to marriage . . . shall differ based on the parties to the marriage being or having been of the same sex rather than a different sex.").

Following the Supreme Court's decision in *Windsor*, Appellees' breach even more clearly includes the obligation not to unlawfully discriminate against plan participants in legally recognized same-sex marriages. *See* 133 S. Ct. at 2692 (striking down the Defense of Marriage Act ("DOMA")'s federal definitions of "spouse" and "marriage" as unconstitutional infringements on state sovereignty). The necessary application of state laws defining "marriage" to inform the application of federal laws – like ERISA – is unequivocal in light of *Windsor*. 133 S. Ct. at 2696 ("[N]o legitimate purpose overcomes the purpose and effect to

14

disparage and to injure those whom the State, by its marriage laws, sought to protect in personhood and dignity.").[3]

Same-sex marriage rights are now formally recognized by manifold federal government agencies and departments, including the Department of Labor (the "DOL") and the Internal Revenue Service ("IRS").  Of particular note, in its August 29, 2013 statement, the IRS recognized that the "terms 'spouse,' 'husband and wife,' 'husband,' and 'wife' include an individual married to a person of the same sex if the individuals are lawfully married under state law, and the term 'marriage' includes such a marriage between individuals of the same sex."  I.R.S. Rev. Rul. 2013-17 (Aug. 29, 2013).  Moreover, on September 18, 2013, the DOL ruled that any burden or inconsistency in implementing the holding of *Windsor* is "avoided by the adoption of a rule that recognizes marriages that are valid in the state in which they were celebrated.  That approach is consistent with the core intent underlying ERISA of promoting uniform requirements for employee benefit plans."  DOL Tech. Rel. No. 2013-04 (Sept. 18, 2013).  In implementing the ruling, "under ERISA" the DOL issued that "the term 'spouse' will be read to refer to any individuals who are lawfully married under any state law, including

---

[3]   As of June, 2014, the number of states recognizing same-sex marriage has risen to nineteen plus the District of Columbia. *See Defining Marriage: Sate Defense of Marriage Laws and Same-Sex Marriage*, NATIONAL CONFERENCE OF STATE LEGISLATORS (June 11, 2014), http://www.ncsl.org/research/human-services/same-sex-marriage-overview.aspx#1.

individuals married to a person of the same sex" and the term "marriage" will be similarly inclusive for the purpose of employee benefit plans. Most recently, the IRS issued subsequent guidance specific to 401(k) plans in IRS Notice 2014-19 (Apr. 21, 2014), which directed that plan sponsors have an affirmative obligation to amend any plan which "define[s] a marital relationship by reference to section 3 of DOMA or otherwise inconsistent with the outcome of *Windsor* . . . [to] reflect[] the outcome of *Windsor*." These administrative interpretations undeniably support the premise that fiduciary obligation has evolved post-*Windsor* and that appropriate recognition of same-sex marriages is now required in states that have legally mandated the same. By failing to analyze Appellants' §§ 404, 409 claim appropriately, the district court failed to consider that as plan fiduciaries, Appellees had a duty to administer the Plan in accordance with state law and in the interests of plan participants rather than in their self-interest, particularly in light of the duties owed to plan participants interpreted to be consistent with *Windsor*. *See* 133 S. Ct. 2675.

Moreover, the district court's holding that because the Plan's incorporation of such discriminatory intentions did not violate § 510, then no breach of fiduciary duty claim can lie for enforcement of the same plan term, is unsupported. Indeed, the district court departed from a well-founded proposition: if carrying out a plan term would run counter to a fiduciary's duty under ERISA, the fiduciary cannot

16

blindly follow.  *See Central States*, 472 U.S. at 568 ("[T]rust documents cannot excuse trustees from their duties under ERISA."); *see also In re SLM Corp. ERISA Litig.,* No. 08 Civ. 4334(WHP), 2010 WL 3910566, at *6 (S.D.N.Y. Sep. 24, 2010) ("ERISA does not provide fiduciaries *carte blanche* to follow plan documents under all circumstances."); *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, No. 83 CIV. 5401 (DC), 1997 WL 278116, at *2 (S.D.N.Y. May 23, 1997) ("[A]n ERISA fiduciary cannot 'hide' behind the terms of a contract to insulate itself from liability for breaching its fiduciary duty."); *Agway, Inc. Emps. 401(k) Thrift Inv. Plan v. Magnuson*, No. 5:03-CV-1060 (HGM/DEP), 2006 WL 2934391, at *18 (N.D.N.Y. Oct. 12, 2006) ("Nothing in ERISA . . . requires blind compliance with plan terms which would require a fiduciary to engage in imprudent conduct."); *Pender v. Bank of America Corp.,* 756 F. Supp. 2d 694, 704 (W.D.N.C. 2010) (holding that an ERISA fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and in a manner consistent with ERISA's provisions") (*internal quotation omitted*). As such, the district court should have considered whether self-interested fiduciaries are acting in the best interest of Plan participants, including the Appellants, in standing behind and enforcing a Plan provision that wrongfully excludes same-sex married couples from attaining benefits when such benefits are afforded to other married couples under the Plan.  Because the court did not even consider the

17

standard for a breach of fiduciary duty, the court's dismissal constitutes reversible error.

**B.** **Altering The Plan For The Sole Purpose Of Denying Coverage To Same-Sex Spouses of Plan Participants Violates ERISA § 510**

**1.** **The District Court Erred by Too Narrowly Applying ERISA § 510**

When New York legalized and recognized same-sex marriage, Appellees altered the Plan to carve out same-sex spouses of participants from beneficiary coverage. Appellants allege that this action and the continued enforcement of the exclusion violate ERISA § 510 as it unlawfully and discriminatorily interfered with the attainment of benefits for certain individuals, including Appellants. By holding that there has been "no adverse employment action" against Appellants, individually, the district court too narrowly interpreted § 510. (JA 33, Order at 12).

ERISA § 510 provides, in relevant part, that "[i]t shall be unlawful for any person to . . . discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]" The critical element in establishing a § 510 claim is to prove "specific intent to interfere with an employee's benefit rights." *Dister v. Continental Grp., Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988).

In *Dister*, this Court adopted the Supreme Court's framework for establishing indirect proof of intent, which was laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), holding that "specific intent" is proven based on the absence of "some legitimate, nondiscriminatory reason for the employee's rejection," which is not a "pretext for discrimination." *Dister*, 859 F.2d at 1111. A reduction in benefits that disproportionately affects a certain group of participants is actionable under § 510 with evidence of the "employer's specific intent to discriminate against individual employees." *Tirone v. N.Y. Stock Exch., Inc.*, No. 05 Civ. 8703(WHP), 2006 WL 2773862, 40 Employee Benefits Cas. 1375, at *4 (S.D.N.Y. Sept. 28, 2006) (*internal quotations omitted*). At its most basic, Appellants pleaded precisely such intent to discriminate, and the clear deprivation of their benefits actionable under § 510.

The district court recognized that the circuits are split regarding whether "adverse employment action" is required for a § 510 violation claim, and noted that the Second Circuit "has not directly ruled on the applicability of Section 510 to plan amendments." (JA 30, Order at 9). The First, Sixth and Seventh Circuits have aptly determined that adverse employment action is *not* essential since "§ 510's protections must at least be broad enough to incorporate non-employee beneficiaries and former employees." (JA 30, Order at 9 (*quoting Straus v. Prudential Emp. Sav. Plan*, 253, F. Supp 2d 438, 447 (E.D.N.Y. 2003) (*citing*

*Mattei v. Mattei*, 126 F.3d 794 (6th Cir. 1997))). The district court should have followed suit since "[i]t seems only logical that former employees and beneficiaries . . . receive some protection from the alienation of those rights under § 510." *Straus*, 253 F. Supp. 2d at 447.

In denying § 510 protections, the district court erroneously analogized the instant case to *McGann v. H & H Music Co.*, 946 F.2d 401, 408 (5th Cir. 1991) (upholding a plan amendment reducing coverage for AIDS), and other cases which reduced or eliminated specific treatments as permitted by ERISA. (JA 31, Order at 10). However, the exclusion of a class of participants otherwise lawfully defined to be included in a plan from enrollment, is not a "discrimination against different types of disabilities or diseases" in the benefits covered by an ERISA plan. (JA 31, Order at 10). Here, Appellees intentionally and unlawfully carved-out certain state-sanctioned marriages as "second-tier marriage[s]," despite New York's authoritative regulation of marriage in the absence of federal definition. *Windsor*, 133 S. Ct. at 2694. Since Appellees acted intentionally and purposefully -- not to administrate over specific covered treatments, but to discriminatorily exclude otherwise lawfully married couples from beneficiary enrollment -- the district court improperly analyzed Appellants' § 510 claim in finding that these actions did not constitute a discriminatory interference with Appellees' rights.

Moreover, even assuming, *arguendo*, the standard requires it, the district court erred in finding that such unlawful exclusion was not an "adverse employment action." (JA 33, 35, Order at 12, 14). When a plan is amended to exclude state-recognized same-sex spouses, affected participants' employment *is* adversely affected. The status that such employees rightfully enjoy in their workplaces and communities is undermined, along with their State-conferred dignity and right to equality. Adverse effects therefore ensue even in the absence of firing (which is the only adverse event the district court considered). (*See* JA 33, Order at 12). This undermines the states' authority to confer rights on same-sex spouses. When a plan is manipulated to exclude same-sex spouses, each day of work serves as a reminder that such employees do not receive the protections that the state has promised them and which the federal government has recognized pursuant to *Windsor. See* 133 S. Ct. 2675. Thus, the district court's narrow interpretation of ERISA § 510 impermissibly excludes the type of protections due to Appellants, in this novel case of clear discrimination.

### 2. Appellants' Suggested Interpretation of § 510 Promotes ERISA's Uniform Civil Enforcement Scheme

In addition, the district court should have held that the Plan violates ERISA § 510 because doing so would comport with broader federal regulatory schemes as they have developed post-*Windsor*, and thus would serve Congress' intent "to provide a uniform regulatory regime over employee benefit plans." *Aetna Health*

*Inc. v. Davila*, 542 U.S. 200, 208 (2004).  Appellants' have invoked a specific and narrow context in which courts should analyze ERISA as it is informed by State law: claims regarding states' authority to confer protections upon same-sex couples through marriage.  Longstanding precedent dictates that "especially . . . where a statute deals with a familial relationship," federal questions may be "determined by state, rather than federal law." *De Sylva v. Ballentine*, 351 U.S. 570, 580-81 (1956) (drawing upon "the ready-made body of state law to define the word 'children'" to "determine whether a child has been legally adopted" since it "requires a reference to state law").  While the district court recognized that "the definition *and regulation* of marriage is a traditional area of state authority," it failed to apply this truism to its analysis of § 510, to promote uniform recognition of the sanctity of marriages recognized by state law.  (JA 26, Order at 5 (*quoting Bond v. Trustees of STA-ILA Pension Fund*, 902 F. Supp. 650, 655 (D. Md. 1995) (*emphasis added*))).

As the Supreme Court noted, undermining protections causes far-reaching harm that injures families and communities; it is experienced by employees, their spouses and also "humiliates tens of thousands of children now being raised by same-sex couples. . . . [It] makes it even more difficult for [these] children to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives." *Windsor*, 133 S.Ct. at 2694. Applied here, in an unprecedented act of clear discriminatory intent

Appellees rely on ERISA, a federal law, to shield their "Exclusion that specifically eliminates same-sex spouses from qualifying for benefits." (JA 31, Order at 10). The district court's ruling was imprudent because endorsing employers' ability to manipulate plans to exclude same-sex marriages, while providing the same benefits to other marriages, perpetuates the "unstable position" that same-sex couples were subjected to under DOMA, despite the Supreme Court's ruling in *Windsor.* 133 S. Ct. at 2694.

Following the expansive protections enacted post-*Windsor* by administrative agencies, including IRS and DOL rulings concerning ERISA plans in particular, (discussed *supra*), on or about September 30, 2013, St. Joseph's own sponsored MetLife pension plan issued a notice to participants that "all contract provisions will be interpreted and administered in accordance with" the IRS' interpretation of "spouse" reflected in the Rev. Rul. 2013-17, to include same-sex marriages. These rulings, and St. Joseph's own interpretation of their impact, demonstrate that the district court's ruling failed to accord with Congress' intent for ERISA "to provide a uniform regulatory regime over employee benefit plans." *Davila*, 542 U.S. at 208. Therefore, the district court should have considered how its ruling is situated within broader federal regulatory schemes and recognized states' right to "exercise . . . their sovereign power" to confer "the equal dignity of same-sex marriages*." Windsor*, 133 S. Ct. at 2693. Therefore, finding that Appellees' unlawful

discrimination gives rise to a § 510 claim achieves the uniform recognition of state-sanctioned marriages.

## C. The District Court Should Have Considered Appellants' Motion For a Preliminary Injunction Since Appellants are Likely to Succeed on the Merits of Their Claim

The district court failed to consider that in order to obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F. Supp. 2d 446, 451 (S.D.N.Y. 2011) (*internal quotation omitted*); *see also Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010). "A preliminary injunction may issue even if the probability of the movant ultimately prevailing is less than fifty percent." *Pamlab, L.L.C. v. Macoven Pharms., L.L.C.*, 881 F. Supp. 2d 470, 475 (S.D.N.Y. 2012). However, "where the injunction sought will alter rather than maintain the status quo, the movant must show clear or substantial likelihood of success." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1999) (*internal citations* omitted).

The district court should have considered Appellants' motion for a preliminary injunction since Appellants are likely to succeed on the merits of their claim in light of *Windsor* and virtually unanimous determinations that have followed. Indeed, other than the district court's opinion below, Appellants are

unaware of a single judicial or agency determination since *Windsor* at the state or federal level that has not manifested a clear right recognizing same-sex marriage where the state has sanctioned the same.  *See, e.g., Bassett v. Snyder*, No. 12-10038, 2013 WL 3285111, at * 14 (E.D. Mich. June 28, 2013).  Therefore, this court should remand Appellants' motion for a preliminary injunction for consideration consistent with the issues considered herein.

## VIII.  CONCLUSION

For the foregoing reasons, Appellants respectfully request the Court reverse the district court's order dismissing their claims for violations of the ERISA, §§ 404, 29 U.S.C. § 1104, 409, 29 U.S.C. §1109 and § 510, 29 U.S.C. § 1140  with prejudice and remand for consideration of Appellants' motion for a preliminary injunction.

Dated:  July 17, 2014
        New York, New York

Respectfully submitted,

**NEWMAN FERRARA LLP**

By: _____

Jeffrey M. Norton
Randolph M. McLaughlin
1250 Broadway, 27th Floor
New York, New York 10001
(212) 619-5400
jnorton@nfllp.com
rmclaughlin@nfllp.com

*Counsel for Appellants*

25

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the foregoing brief is in 14-Point Times New Roman proportional font and contains 5,674 words and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

Dated:  July 17, 2014
       New York, New York

**NEWMAN FERRARA LLP**

By: _____
      Jeffrey M. Norton
      Randolph M. McLaughlin
      1250 Broadway, 27th Floor
      New York, New York 10001
      (212) 619-5400
      jnorton@nfllp.com
      rmclaughlin@nfllp.com

      *Counsel for Appellants*

26